*673 OPINION OF THE COURT
Samuel Greenstein, J.
The issue in these two motions, relating to different cases, initially concerns whether the defendant City of New York conducted proper searches for prior notices of defect pursuant to this court’s orders of January 14, 1987. The adequacy of the search in each case turns in part on whether the defendant city is obligated to index notices of claim and/or notices of defect by location under the applicable statutes and cases.
The importance of this aspect of pretrial discovery results from the crucial burden placed upon a plaintiff under the Pothole Law. The Pothole Law, as section 7-201 (c) of the Administrative Code of the City of New York is popularly known, requires prior notice of defect as a condition precedent to a successful action against the City of New York for damages sustained on its roadways or sidewalks.
In the first case, Shatzkamer v City of New York, the plaintiffs’ attorney served a notice for discovery and inspection on the defendant city in May 1986, requesting inspection of any notices of defect, notices of claim, work permits, accident or inspection reports, repair reports and other items relating to the location of the accident. Thereafter plaintiffs moved to strike the answer of the defendant city for failure to comply with such notice. On January 14, 1987, this court conditionally granted the motion to the extent that the sanction of preclusion was to be implemented, unless disclosure in compliance with the demand, as modified by the court, was supplied.
Thereafter the defendant sent a letter to plaintiffs’ attorney in April 1987, stating that it had searched but had failed to find any prior notices, reports, work permits or any other items demanded, relating to the location involved, during the relevant time period. Plaintiffs then reapplied to strike the answer of the defendant city, this time for failure to comply with the court order directing discovery. Plaintiffs argued that the defendant city was frustrating discovery by its refusal to index notices of claim by location.
On November 9, 1987, this court issued an interim order directing the defendant city to furnish the court and the plaintiffs with two affidavits: one setting forth essentially the manner in which the city keeps all notices of defect per section 50-g of the General Municipal Law and the number of pages in such book for the relevant time period; the other by the individual who conducted the search per the earlier court *674 order as to how, when and where the search was made and how long it took. Affidavits, which purported to comply with the order, were received at the beginning of January 1988. Oral argument was made and memoranda of law were then submitted.
The pattern in the companion case Termine v City of New York is almost identical. A notice for discovery and inspection regarding prior notices of defect was served, followed by a motion to strike the answer of the city. The court issued an order conditionally precluding the city, identical to that in Shatzkamer and on the same date. The city reported after a search that it had found no notices of defect prior to the date of the accident on December 15, 1981.
The plaintiffs in Termine, who are represented by the same attorney as the plaintiffs in Shatzkamer, then similarly moved to strike the answer of the defendant city for noncompliance. The motions in both cases were returnable on the same date and since that time they have proceeded together in all respects.
Under the Pothole Law (Administrative Code § 7-201 [c], formerly § 394 a-1.0 [d], eff June 4, 1980), an individual injured due to a defective or obstructed roadway or sidewalk may not sue the City of New York for damages unless the city had previously been given written notice of such defective or obstructed condition and failed to correct it within 15 days. Prior to 1980 there had been no such restriction on maintaining a civil suit for damages against the city.
The pertinent paragraphs provide:
"2. No civil action shall be maintained against the city for damage to property or injury to person or death sustained in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing including any encumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the defective, unsafe, dangerous or obstructed condition, was actually given to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice, or where there was previous injury to person or property as a result of the existence of the defective, unsafe, dangerous or obstructed condition, and written notice thereof was given to a city agency, or there was written acknowledgement from the city of the defective, unsafe, dangerous or obstructed condi *675 tion, and there was a failure or neglect within fifteen days after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or the place otherwise made reasonably safe.
"3. The commissioner of transportation shall keep an indexed record in a separate book of all written notices which the city receives and acknowledgement of which the city gives of the existence of such defective, unsafe, dangerous or obstructed conditions, which record shall state the date of receipt of each such notice, the nature and location of the condition stated to exist and the name and address of the person from whom the notice is received. This record shall be a public record. The record of each notice shall be maintained in the department of transportation for a period of three years after the date on which it is received and shall be preserved in the municipal archives for a period of not less than ten years.” (Administrative Code § 7-201 [c].)
The actual notice upon which a lawsuit depends may thus lie secreted in the labyrinth of municipal government. It has been held, for instance, that a report by an inspector was sufficient notice (Ostermeier v Victorian House, 126 Misc 2d 46) and that a notice of claim filed in the Comptroller’s office constitutes a notice of defect (Bair v City of New York, 131 Misc 2d 734).
Section 50-g of the General Municipal Law, which is also applicable, provides that the municipality must keep an indexed record, in a separate book, of any notices of defect received, whenever such notice is a condition precedent to a civil suit against the municipality. But section 50-g did not specify the manner of indexing until an amendment in 1987, which is prospective only (the accidents in both these cases occurred in 1981). In comparison, section 50-f of the General Municipal Law, relating to the recording of notices of claim by municipalities, specifically states that indexing should be done alphabetically by the name of the claimant.
Section 50-g was amended in 1987 to specify indexing by the location of the allegedly defective condition, effective for all notices received on or after September 2, 1987. Section 50-f of the General Municipal Law was also amended prospectively in 1986 to require additional indexing by location of those notices of claim relating to defective conditions. These amendments do not apply in the two cases here.
The Pothole Law requires that the written notice be given *676 to the Department of Transportation, while section 50-f (1) requires that a notice of claim be kept with an "officer or employee designated for that purpose by the governing body of such municipal corporation”. Finally, section 50-g (1) provides that the recording of the notice of defect be indexed "in a separate book” with the additional requirement in subdivision (2): "2. Where the statute, charter or local law requires that the written notice be given to a specified city officer or employee the record shall be made and kept by the person so specified. Where the statute, charter or local law requires that the written notice be given to any of several specified city officers or employees, or omits to specify the officer or employee to whom the written notice shall be given, the record shall be made and kept by an officer or employee designated for that purpose by the governing body of the city. In the absence of such designation the record shall be made and kept by the commissioner of public works of the city or, if there be no officer of that title, by an officer exercising corresponding duties. The record of notices of defects shall be a public record. The record of each notice shall be preserved for a period of five years after the date it is received.”
It becomes readily apparent that the records, even when properly kept, may be with the Comptroller, the Department of Transportation or even the Commissioner of Public Works.
At the outset, it should be noted that it is the defendant and not the plaintiff who is required to have the actual notice, but it is the plaintiff who is required to prove knowledge which is exclusively within the ken of the defendant city.
Thus, the obligations of the plaintiff can only be fulfilled by the diligent and good-faith effort of the defendant city to search its internal records. The effort of the City of New York to comply with this court’s order in each case must be measured by both the extent and the quality of its search.
Unfortunately, the defendant, by active concealment, lackadaisical effort or a refusal to intelligently compile its records, may be rewarded by its own imperfections. CPLR article 31, however, indisputably provides the mechanism by which a recalcitrant defendant may be compelled to engage in meaningful disclosure.
The most critical documents submitted during the course of these motions were the affidavits from the defendant city per this court’s interim orders of November 9, 1987. The affidavit in each case as to how the city maintains its records to comply *677 with section 50-g of the General Municipal Law and the number of pages in the record book for the relevant time period is the same. Both affidavits give yearly page numbers for the Borough of Brooklyn. This is actually an error on the part of the city, because the accident in the Termine case occurred in Queens and, as a result, the data given in that affidavit should have been for Queens County.
But the information given, even if just for the Borough of Brooklyn, is inadequate. According to the affidavit from a supervisor in the Comptroller’s office, it was the procedure of that office, prior to the 1987 amendment of section 50-g, that "Upon the receipt of a notice of claim, each claim was assigned a number, and that number, together with the claimant’s name, the date of the accident, the nature of the claim and the location of accident as described in the notice of claim, were entered into this office’s computer”. (Emphasis added.)
From time to time the city would print out all sidewalk and roadway "defect claims” received in that year in alphabetical order, by claimant’s name, for each borough. (Apparently, the term "defect claims” describes notices of claim relating to defects in the roadways and sidewalks.) The printouts were then bound in books. For the calendar year of 1980 the index book for Brooklyn had 147 pages; 80 pages for 1981; 124 pages for 1982; 104 pages for 1983; 46 pages for January 1, 1984 through April 30, 1984; 151 pages for May 1, 1984 through June 30, 1985; and 83 pages for July 1, 1985 through February 2, 1986.
It had been this court’s distinct impression from the prior papers and arguments in these motions that the city objected to making a search of prior notices of claim and other data requested by the plaintiffs because it involved a review of thousands upon thousands of claims. The court had also been led to believe that indexing notices of claim or notices of defect by location would involve a tremendous amount of work for the city.
At no time was it mentioned by the city’s attorneys that the data in question was already computerized, including information relating to location, and that it was merely a matter of further printouts of relatively small size.
It would also appear that there are very few notices of claim relating to defects in the roadways or sidewalks in any given year. At one point in the argument of these motions on *678 January 25, 1988, the plaintiffs’ attorney stated that the most pages in any one year was 151, "which means 151 notices of claim, because each would be a page.” This allegation was noticeably never denied by the city’s attorney, at that argument.
In the second affidavit submitted by the city in each case, the individual in the Comptroller’s office who made the search of the city records for prior notices of defect, as ordered by this court, stated that the search of the notices of claim in the Shatzkamer case took 1½ hours, while the search in Termine took 1 hour. The notice of claim index for Brooklyn was reviewed in the Shatzkamer search and the index for Queens in the Termine search.
These affidavits refer only to searches of the notices of claim filed by claimants with the city. Yet the notice for discovery and inspection served by plaintiffs’ attorney in each case requested not only notices of claim at the accident location but also reports and notices of defect (which include but are not limited to notices of claim). This court, in its orders of January 14, 1987, did not modify the items demanded, only the time period of the search. Moreover, this court, in its orders of November 9, 1987, directed the city to supply it with affidavits relating to the manner in which the city complies with section 50-g of the General Municipal Law, which relates to recording notices of defect, not notices of claim.
This court now holds first that the search made by the city in each case was inadequate because the city, according to its own affidavits, searched only the index of notices of claim. For this reason alone the court must find that the city failed in each case to comply with this court’s order of January 14, 1987.
While it is not the function of this court to tell a defendant the manner in which it is required to keep its records, nevertheless, the recordkeeping which, unintentionally or otherwise, results in the frustration of discovery mandates appropriate sanctions pursuant to CPLR 3126.
While the defendant was not required to use any particular system of indexing under section 50-g prior to September 2, 1987, it could not and cannot choose to index notices of defect filed prior to that date in so scattered and byzantine a fashion as to deprive those with legitimate claims against the city of the right to maintain civil actions for damages because prior notices of defect that exist cannot be found, either by the city or by the plaintiff.
*679 It would seem that any search would be questionable as long as this defendant does not keep all such notices of defect, including but not limited to notices of claim relating to a defect in the roadway or sidewalk, received on or after June 4, 1980 and before September 2, 1987, in a separate book indexed by location, which book would be available for inspection by the general public.
Under the Pothole Law it is the city which must not only keep accurate records of all prior notices of defect, but also make same accessible to its adversaries. Absent this diligence then it should not be permitted to avail itself of the benefits of such a law.
The courts have increasingly addressed the issue of record-keeping by this defendant. In Bair v City of New York (131 Misc 2d 734, 736 [Sup Ct, Kings County, Mar. 24, 1986]), the court considered "whether the city is required to search the notices of claim filed with it to see whether via a notice of claim it had been given notice of a defect in a lawsuit other than the one * * * at bar”. The attorney for the plaintiff in Bair and its companion cases, who is the same attorney involved in the cases now before this court, claimed that such notices should be indexed by location and that, if they were not, the city must search the notices of claim to determine if it had received prior notice of defect in that manner. The defendant city argued that it was not required to and did not index notices of claim by location and that plaintiffs could search all the notices of claim, which are a public record, themselves.
Justice Clemente held that under the Pothole Law: "The commissioner is required to keep a record of all written notices of defect. Certainly, the notice of claim required to be filed by General Municipal Law § 50-e must be considered a notice of defect since General Municipal Law § 50-e (2) in setting forth the form of a notice of claim requires it to set forth the place where the claim arose.” (Bair v City of New York, supra, at 738.)
Justice Clemente rejected the position of the city that it was under no obligation to examine the notices of claim to determine if the city had prior notice. He then went on to state that:
"Based on the use of the word 'all’ in the Administrative Code and the principle of strict construction, I conclude that a notice of claim filed with the city constitutes the notice *680 required by Administrative Code § 394a-1.0 (d). Hence, it follows that the city should index notices of claim based on location * * *
"A party, municipal or otherwise, should not be rewarded for frustrating discovery. The establishment of cumbersome, double bookkeeping devices, whether through design or lack of thought is impermissible when the effect is the prevention of disclosure. To make available notices of claim numbering in the tens of thousands filed by people throughout the entire City of New York, recorded separately and not by location, in a search for a prior accident at a particular location is, in reality, the denial of availability. Thus, the city is obliged to furnish the required information. If it has not kept a proper index, then it is its duty to search the notices of claim to determine whether there has been prior notification of the defects involved herein * * * Nor does this result conflict with the principle that it is the plaintiff’s duty and burden to show that prior written notice of a defect was given * * * since it is the city which has been made custodian of the records both for notices of claim and for the notices called for by the pothole law.” (Bair v City of New York, supra, at 738-739.)
Apparently the city did not reveal to Justice Clemente that the records involved were already computerized, including data relating to location, and that the city kept a separate, smaller printout yearly for each borough of those notices of claim relating to defects in the sidewalk or roadway. Nor has the city revealed this information to the public-at-large. Instead it has encouraged individuals or their attorneys, if represented, to pore through thousands of claims relating to a multitude of injuries suffered under all sorts of circumstances.
The first case to follow Bair (supra), which was not appealed, was Zuccaro v City of New York (Civ Ct, Kings County, Sept. 1986, index No. 3551/84). In Zuccaro the plaintiffs moved to strike the answer of the defendant city for failure to comply with a notice for discovery and inspection which was virtually identical to the ones served in Termine and Shatzkamer, the matters herein. The court modified the demands for information relating to prior notice of defect in part (essentially cutting down the time period of the search) and ordered the defendant city to comply with the notice as modified.
Judge Feinberg characterized the issue in controversy in Zuccaro (supra) to be the same as in Bair (supra): whether the city was required to search notices of claim filed with it under *681 section 50-e of the General Municipal Law to determine whether it had thereby been given prior notice of a defect under the Pothole Law and also whether the city should be indexing notices of claim by location.
The court held that the city should maintain an index of all notices of claim by location in order not to frustrate discovery unfairly. Judge Feinberg stated in regard to the Pothole Law that: "The law fundamentally was enacted for the purpose of having the City keep the streets and highways safe for the citizens of this State. Where the City fails to fulfill its duty and as a result one is injured, the victim is permitted to sue for damages sustained. However, where a statute frustrates discovery to the extent that the claim is defeated, then the statute should be disregarded. For such statute having been intended to 'shield’ the City against conceived claims, it is now used as a 'sword’ to strike down and prevent victims of the City’s negligence from prosecuting meritorious claims for injuries, against which the statute was originally intended to prevent.” (Zuccaro v City of New York, supra.)
In a subsequent related decision in the Zuccaro case (supra), issued on March 18, 1987, Judge Feinberg granted a follow-up motion of plaintiffs to preclude the city from utilizing the Pothole Law as a "defense” at trial.[1]
On November 25, 1986, Judge Rader issued two identical short-form decisions in Kings County Supreme Court on motions in the cases of Sarna v City of New York (index No. 12811/83) and Cohen v City of New York (index No. 12137/85). In each decision he granted plaintiff’s motion to the extent that the "deft City of N.Y. shall index notices of claim regarding sidewalk and roadway defects by location as per Bair”. Justice Rader later denied motions for reargument by the defendant city.[2]
It would appear from Bair, Zuccaro, Sarna and Cohen (supra) that the City of New York has repeatedly been told by the courts, even before the effective date of the recent prospective amendments to sections 50-g and 50-f of the General Municipal Law, that it should index notices of claim, particularly those relating to defects in the roadway or sidewalk, by location of the accident.
*682 This court agrees with those holdings that notices of claim filed under section 50-e of the General Municipal Law constitute notices of defect under the Pothole Law and section 50-g of the General Municipal Law.
The court also recognizes a further obligation of the city in regard to section 50-g of the General Municipal Law. Notices of claim are but one form of notice of defect. The Pothole Law uses very broad language in describing the sources of notices of defect. Written notice of defect might possibly come, for instance, in the form of an actual letter to the city of a roadway , defect, or in an inspection report of work done at the location, or in a roadway repair report, or in an application for a permit to tear up the roadway to do work on the pipes or wires below. While all of these items might be public records, they are filed in so many different books and places that it is almost impossible for a claimant to check them all for prior notice of defect. Indeed many a litigant, particularly one unrepresented by counsel, might not be aware of such records.
It must be noted that the Court of Appeals recently issued a decision on April 21, 1988, in Laing v City of New York (71 NY2d 912), in which it held that an inspection report filed with the Parks Department in connection with the pruning of a tree, which also noted that the sidewalk was cracked, did not constitute notice of defect under the Pothole Law. The inspection report in question stated only that the sidewalk was cracked, but did not describe its condition as unsafe or defective. The Court of Appeals therefore concluded that as such it did not reach the question "whether a 'written acknowledgment from the city’ under the Pothole Law must come only from the Department of Transportation”. (Supra, at 914.)
In any event, the emphasis herein is not whether this particular document or that particular document filed with the city constitutes a notice of defect under the Pothole Law. Rather this court is concerned with the obligations of the city during the discovery process to disclose those items which are indeed notices of defect.
It would seem that disclosure requirements obligate the defendant city under the Pothole Law and section 50-g of the General Municipal Law to keep all of these notices of defect, from all sources, in one separate book. Failing that it must enumerate all the places it has searched at an absolute minimum. The city already has a separate book for notices of *683 claim relating to defects in the roadway. But this alone is insufficient. There is no proof that the city keeps such a book of all notices of defect, as mandated by the Pothole Law and section 50-g, however indexed.
There is no logical or consistent way, however, to index such notices of defect alphabetically. While notices of claim might be filed under the name of the claimant, under what letter would other written notices, such as inspection reports or applications for work permits by utility or other companies, be filed?
All of the notices of defect share but one common denominator: the location of the defect. Indexing by location of the defect under the Pothole Law and section 50-g of the General Municipal Law is not only the fairest way to index, it is really the only way to index the data, if the city is to comply with the statutes that require it to keep an indexed record in a separate book of all notices of defect. It is perhaps for this reason that the Legislature specified in section 50-f of the General Municipal Law that notices of claim were to be indexed alphabetically but omitted to put this requirement in section 50-g.
Furthermore, assuming that the city does finally comply with the two statutes and keeps a single record of all notices of defect, but one indexed in some manner other than by location, such a record would be inevitably much larger than the present yearly printouts of notices of claim relating to defects in the roadway for each borough. The claimant, if this information is not kept by location, would. be faced with a massive jumble of data almost impossible to review. Thus, for reasons analogous to those in Bair (supra) and Zuccaro (supra), this court must hold that a failure to index such a record in any way but by location has intrinsically frustrated discovery and is therefore impermissible.
The foregoing analysis is not merely an exercise in the evaluation of a good-faith dispute of the litigants. It might be noted that this defendant was initially required to investigate its records in May 1986, in Shatzkamer and in November 1986, in Termine. Thereafter, despite interim orders in January 1987, and November 1987, this defendant has still not complied — nor, by the way it keeps its records, will it probably ever be in compliance. Therefore sanctions, commensurate with the failure of defendant to perform its obligation within an almost two-year period, must be invoked.
*684 CPLR 3126 provides:
"If any party, or a person who at the time a deposition is taken or an examination or inspection is made, is an officer, director, member, employee or agent of a party or otherwise under a party’s control, refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to notice duly served, the court may make such orders with regard to the failure or refusal as are just, among them:
"1. an order that the issues to which the information is relevant shall be deemed resolved for purposes of the action in accordance with the claims of the party obtaining the order”.
Accordingly, for all the reasons stated above, this court grants the motion in each case to the extent that the plaintiff need not prove in either case that the defendant had written notice of the alleged defect.

. That decision is presently being appealed by the defendant city to the Appellate Term, but no date for argument has yet been scheduled.

. Both of these decisions are presently on appeal by the defendant city to the Appellate Division and are scheduled for the May 1988 Term.